IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IRON CITY INDUSTRIAL CLEANING )
CORPORATION trading and doing business as )
IRON CITY UNIFORM RENTAL, )
                      Plaintiff, ) 2:10-cv-991
                                        )
                v )
                                        )
AUTO SYSTEMS CENTER )
doing business as MIDAS, )
                      Defendant. )

## MEMORANDUM ORDER

      Pending before the Court is a MOTION IN LIMINE (Document No. 21) filed by Plaintiff Iron City Industrial Cleaning Corporation d/b/a Iron City Uniform Rental ("Iron City"). Defendant Autosystems Center d/b/a Midas ("Midas") has filed a response in opposition to the motion. Both parties have filed briefs in support of their respective positions and submitted exhibits for consideration by the Court. The motion is ripe for disposition.

      This case arises out of a contract dispute which primarily involves the enforceability of an "automatic renewal" provision. Iron City contends that the parties entered into an arms-length, written, fully-integrated Rental Agreement (the "2008 Agreement") which should be enforced in accordance with its plain language. Midas, on the other hand, contends that the 2008 Agreement does not reflect the intention of the parties. Midas seeks to introduce into evidence: (1) the prior contracts between the parties; (2) the discussions and negotiations that took place between representatives of the parties that led up to the 2008 Agreement; and (3) an explanation of why it sought to shorten the length of the agreement. In the instant motion, Iron City seeks to preclude introduction of such "parol evidence."

1

Factual Background

Briefly summarized, the evidentiary record reflects that Iron City had been a long-term supplier of work uniforms to Midas and the parties had entered into a series of prior contracts. The form of the contract consisted of a one-page Customer Review Sheet/Addendum which contained a Schedule of Products and Charges and signature lines, followed by two additional pages which enumerated standard General Terms and Conditions. Paragraph 12 of the General Terms and Conditions contained an integration clause. The "automatic renewal" clause at issue was the second General Term and Condition and reads:

> **2. The initial term of this Agreement shall commence on the date of this Agreement, and shall continue thereafter for a period of ___ revenue weeks. This Agreement shall be automatically renewed for successive ___ revenue week periods unless either party provides 90 days written notice of its intention not to renew prior to the expiration of the then current period….**

In the 2003 Agreement, the parties agreed upon a contract length of 156 revenue weeks and manually struck through the "automatic renewal" provision. In 2006, the parties entered into a contract extension, which again manually struck the "automatic renewal" provision.

In April 2008, Ted Behnken, Controller of Midas, and John Welling, a former General Manager of Iron City who was acting as a consultant, had a series of conversations regarding another extension of the agreement. Mr. Welling is now deceased. According to Midas, it made Iron City aware that the length of the agreement would need to be reduced to 115 weeks because Midas was going to terminate its relationship with Iron City and enter into a nationwide arrangement with a competitor, Cintas. On April 30, 2008, Behnken agreed to the terms for renewal of the contract. Behnken signed and faxed a partial contract form, with the agreed-upon revisions, to Iron City. The page which contained the "automatic renewal" provision was not

included in the fax sent by Behnken.

Behnken was aware that, in accordance with past practice, Iron City would not accept his faxed signature. Therefore, the parties arranged to have the 2008 Agreement signed in person by Chris Harter, a Regional Manager of Midas. A draft of the final form of the 2008 Agreement was sent to Harter in advance. Apparently, neither Iron City nor Harter sent a copy to Behnken. The 2008 Agreement is dated April 30, 2008, although it was not signed until some later date. The parties dispute whether the actual signature occurred in June or July 2008. At the meeting, Chris Harter modified General Term and Condition 2 by hand to reflect the length of the agreement as 115 weeks and signed his initials. In that same paragraph, the "automatic renewal" clause was not manually stricken. As evidence of facial ambiguity, Midas points to the first page of the 2008 Agreement, on which there is a provision that provides: "By checking and initialing this box, Customer agrees . . . to extend the Term for an additional renewal period." The applicable box beside the "Date of Renewal" and "Term" were not marked or initialed.

Legal Analysis

This diversity case is governed by Pennsylvania substantive law. The Pennsylvania Supreme Court has defined the parol evidence rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract ... and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

*Gianni v. Russell & Co.*, 126 A. 791, 792 (1924). There are several well-recognized exceptions

such that parol evidence "may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake." *Yocca v. Pittsburgh Steelers Sports, Inc.,* 854 A.2d 425, 498 (Pa. 2004) (citations omitted). In addition, "parol evidence is admissible to explain or clarify or resolve [an] ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *Id.* The burden is on the proponent of parol evidence to overcome the written contract by "clear, precise and indubitable evidence." *Reed v. Horn*, 22 A. 877 (Pa. 1881). In *Wells Fargo Home Mortgage v. Leach*, 2010 WL 3038794 *3 (W.D. Pa. July 30, 2010), which aptly summarizes the applicable law, the Court explained that in determining whether a mutual mistake exists, "the court may consider the subject matter, the apparent object or purpose of the parties and the conditions existing when the instrument was executed."

Iron City recognizes that these exceptions to the parol evidence rule exist, but argues that they do not apply to the facts of this case. The Court concludes that the existing evidentiary record is insufficient to enable it to definitively exclude all parol evidence at this stage of the case. The extrinsic and collateral circumstances leading up to the 2008 Agreement were certainly complex and unique. The partial agreement signed and faxed by Behnken did not address the "automatic renewal" provision and the final document was apparently never sent to him. The parties had entered into several prior contracts in which the "automatic renewal" provision had been manually stricken. According to Midas, there was even stronger reason to strike the "automatic renewal" provision from the 2008 Agreement because the length of that Agreement was being reduced to correspond with the nationwide switch to Cintas. On the other hand, Iron City contends that the expiration of the Cintas contracts would enable other locations to become

4

Iron City customers. In sum, Midas faces a difficult burden to demonstrate that one or more of the exceptions to the parol evidence rule is applicable, but the Court concludes that it should be given an opportunity to do so.

In accordance with the foregoing, the MOTION IN LIMINE (Document No. 21) filed by Plaintiff Iron City Industrial Cleaning Corporation d/b/a Iron City Uniform Rental is **DENIED**.

SO ORDERED this 15th day of April, 2011.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Francis C Rapp, Jr., Esquire
Email: fcr@fgsmlaw.com

James S. Ehrman, Esquire
Email: jehrman@margolisedelstein.com